IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHERYL E. ZAPPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-3107 |
| | ) | |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Sheryl E. Zappia appeals the denial of her application for disability insurance benefits under the Social Security Act. This Court has jurisdiction. 42 U.S.C. § 405(g). The parties have filed cross-motions for summary judgment. <u>Motion for Summary Judgment (d/e 12)</u>; <u>Defendant Commissioner's Motion for Summary Affirmance (d/e 17)</u>. For the reasons set forth below, Zappia's Motion for Summary Judgment is ALLOWED and the Commissioner's Motion for Summary Affirmance is DENIED. The Decision of the Commissioner is reversed and the case is remanded.

STATEMENT OF FACTS

Zappia was born on June 21, 1966. She attended high school and secured a GED. She later took some college courses. <u>Certified Record of Proceedings before the Social Security Administration (d/e 9) (R.)</u>, at 399. She worked as an insurance claims adjuster, a telephone switchboard operator, a receptionist, and a general office clerk. In April 2003, she fell and injured her knee. Examination of her knee showed degenerative changes. <u>R.</u> 141. She was placed on crutches.

Zappia fell again while she was on crutches. During this fall, Zappia jammed the crutch into her right underarm. Thereafter, she developed significant pain in her right shoulder. Her orthopedic surgeon Michael Watson, M.D., suspected brachial plexopathy and referred Zappia to Edward A. Trudeau, M.D. On July 2, 2003, Dr. Trudeau conducted neurological studies that indicated right brachial plexopathy and an upper trunk lesion, mild to moderately severe in testing terms. <u>R.</u> 163-67.

Zappia's primary physician Daniel O'Brien, M.D., then referred Zappia to an anesthesiologist and pain specialist Babu Prasad, M.D. Dr. Prasad diagnosed brachial plexus neuropathy that caused reflex sympathetic dystrophy (RSD) of the right arm. Dr. Prasad gave Zappia a series of

2

stellate ganglion and brachial plexus blocks. Zappia showed significant, temporary, improvement. Dr. Prasad prescribed pain killers Neurontin and Stadol. Dr. Prasad also observed that Zappia walked with a cane in her left hand and was unable to use her right arm to lift objects weighing 10 pounds. R. 174, 186-88.

On January 16, 2004, Zappia saw a neurologist M. L. Mehra, M.D. Dr. Mehra conducted neurological studies that indicated abnormalities consistent with cervical disk disease rather than a brachial plexus injury. R. 175-79.

On February 19, 2004, Zappia was seen by surgeon David J. Olysav, M.D. Zappia was still complaining of pain in her right arm and shoulder. Dr. Olysav asked Zappia to move her right arm, but Zappia said that she could not. Dr. Olysav had observed Zappia move the arm somewhat already. He explained to her the difference between inability to move one's arm at all and the ability to move it with pain. Zappia then moved her right arm and fingers, but reported significant pain. Dr. Olysav also found that passively, Zappia had full range of motion in both shoulders, although with significant pain. Dr. Olysav concurred that Zappia had RSD and a possible upper trunk lesion as diagnosed by Dr. Trudeau. R. 181.

3

On July 28, 2004, Zappia was referred to Vittal Chapa, M.D. for a consultative evaluation. Dr. Chapa found atrophy of the right shoulder. He found that the right upper extremity was hypersensitive to pinprick sensation. He found that right biceps and triceps reflexes were absent. He found no passive range of motion in the right shoulder and right elbow. He found that she could not perform either fine or gross motor skills with her right hand and had no grip in her right hand. Dr. Chapa diagnosed RSD of the right upper extremity and intractable right upper extremity pain due to RSD. R. 201-04.

On August 16, 2004, an agency physician reviewed Zappia's medical records and made a residual function capacity assessment.[1] The agency physician opined that Zappia could lift 20 pounds occasionally and 10 pounds frequently, could sit or stand for six hours in an eight hour day, had occasional postural limitations, and had limitations in her ability to push, pull and use her hands. R. 193-95. The agency physician stated, "Claimant had an injury to right shoulder and developed RSD of right upper extremity. There is muscle atrophy of right shoulder. She has no grip with right hand.

---

[1] The Court cannot determine the physician's name because the signature of the physician is not legible. R. 199.

4

Use of left hand and arm are normal. She cannot use her right arm for pushing and pulling at all." R. 193. He also stated, "Claimant is not able to use her right hand at all. Use of her left hand . . . is normal." R. 195. The agency physician also noted that, "The right upper extremity is also hypersensitive to pinprick sensation. She has decreased range of motion of the right knee. She is able to flex both her hips to 90 degrees. There is full range of motion of left knee." R. 199. On November 4, 2004, Kenney Charles, M.D., concurred in the agency physician's findings. R. 200.

Zappia's long-term disability insurance carrier referred her to Paul A. Smucker, M.D., for an independent medical evaluation. Zappia told Dr. Smucker that she could not move her right arm, but Dr. Smucker observed her arm move about 30 degrees as her sister helped her remove her blouse. Dr. Smucker observed swelling in the right wrist and hand consistent with disuse and dependent edema. The right upper extremity was slightly discolored with a purplish hue. Zappia's skin on her right hand was shiny. Dr. Smucker said she could not extend her right thumb and index finger fully. He noted complaints of allodynia, which is pain caused by stimulus that is not normally painful. In this case, Zappia complained that clothes on her right arm caused pain. Dr. Smucker determined that she presented

with RSD affecting the right upper extremity. He referred her for a functional capacity study to determine the severity of her condition. R. 207-12.

On August 30, 2005, Zappia underwent a functional capacity study at Ergo Science Rehabilitation in Hillsboro, Illinois. The examiner noted that in one or more of the repetitions of a grip test, Zappia showed zero grip strength, which was indicative of non-compliance. The examiner stated that zero grip strength was impossible because that would mean that the arm was paralyzed and it was not. R. 228. At the end of the testing, however, the examiner concluded that Zappia lacked the capacity to perform even sedentary work due to RSD. The examiner noted that Zappia's "responses were consistent throughout the evaluation and symptom magnification does not seem to be a factor." R. 232.

Zappia was then referred to Ronald Zec, Ph.D., for neuropsychological testing. R. 234-252. Dr. Zec noted that Zappia failed two tests of her effort, indicating that she did not put forth adequate effort, and so, the cognitive test results could not be considered reliable. R. 234.

Dr. O'Brien, Zappia's primary physician, also diagnosed Zappia with RSD. Dr. O'Brien opined that Zappia suffered from right brachial plexus

neuropathy, upper trunk lesion, and RSD caused by the brachial plexus neuropathy. Dr. O'Brien opined that Zappia was totally disabled, that her condition was associated with severe pain, and that she was required to take powerful analgesics to control the pain. Dr. O'Brien stated that Zappia's mental clarity and acuity were also impaired by the medications. R. 292.

Zappia also received ongoing treatment of her knees. She had significant crepitation in the left knee. R. 361. She also had diminished strength and range of motion in the knee. R. 361. She underwent diagnostic arthroscopy on June 16, 2006. Zappia thereafter developed problems in her right knee. She underwent another arthroscopic surgery of the right knee in March 2007. She had developed grade 3 chondromalacia of the right patella. R. 382. She thereafter developed tendonitis in the right Achilles tendon. R. 391. On September 12, 2007, Zappia was seen by another orthopedic surgeon Osaretin Idusuyi, M.D. Dr. Idusuyi diagnosed Achilles tendonitis and recommended a brace for the leg and a strengthening program. R. 389A-89B.

The Administrative Law Judge (ALJ) conducted a hearing on March 6, 2007. Zappia and vocational expert James Lanier, Ph.D., testified. Zappia said that she had severe pain in her right arm and was unable to

7

move either her arm or her right fingers. She said that her husband, sister, or eldest daughter helped with everything, including dressing and bathing. Her husband also did all the house work, cooking, yard work, and shopping. She only dressed if she was leaving the house. Otherwise she wore a t-shirt or sleeveless shirt. She said that her thinking was muddled due to the pain killers. She had poor concentration and could not enjoy activities with her family. R. 403-04, 410-11, 441-18.

The ALJ then questioned Dr. Lanier. She asked Dr. Lanier to assume a person of Zappia's age with her education and work experience who was limited to light or sedentary work, except that the person could not perform climbing or working at heights, prolonged walking, over shoulder work, or a full extension reaching with the right upper extremity. Dr. Lanier opined that such a person could perform Zappia's past work as a claims adjuster. The ALJ then asked Dr. Lanier to assume that such a person was limited to sedentary work with the additional restrictions, and also, limited to routine repetitive types of work. Dr. Lanier opined that such a person could perform several jobs in the economy including ticket checker, interviewer, and order clerk. Dr. Lanier testified that all of these jobs would require frequent reaching, handling, and fingering. R. 418-20.

The ALJ then issued her decision on June 14, 2007.  R. 16-30.  The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d). Such severe impairments are set forth in the Listings.  20 C.F.R. Part 404 Subpart P, Appendix 1.  The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to her prior work considering her residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience.  20 C.F.R.

9

§§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Zappia met her burden at Steps 1 and 2. She was not currently engaged in gainful activity, and suffered from serious impairments. The ALJ found that Zappia, "had a right shoulder injury and arm injury, bilateral chondromalacia of patella, and history of arthroscopic surgeries and obesity; she has also complained of various other impairments throughout the record; . . . ." R. 20. The ALJ also found that Zappia suffered from, "RSD/brachial plexus injury." R. 26.

The ALJ found at Step 3 that Zappia's condition did not meet any of the Listings. The ALJ considered the Listings for musculoskeletal and neurological impairments. 20 C.F.R. Part 404 Subpart P, Appendix 1, Listings 1.00 et seq., and 11.00 et seq. The ALJ also stated that Zappia did not allege any mental impairment under the Listings. R. 21.

At Step 4, the ALJ found that Zappia was not credible and that her

complaints of pain were exaggerated. The ALJ noted that: (1) Dr. Zec found that she did not make adequate effort in his cognitive testing; (2) Zappia showed a grip strength of zero on some of the function testing which indicated non-compliance; and (3) Zappia initially told Dr. Olysav that she could not move her right arm, but later did so. R. 21-24. Based on this credibility finding, the ALJ concluded that any medical opinions that were based on anything that Zappia told a doctor were unreliable and should be ignored. R. 22-23.

The ALJ did not give the opinions of Zappia's treating physician Dr. O'Brien controlling weight because she found that his opinions were not supported by or consistent with the evidence in the record as a whole. R. 24. The ALJ stated that Dr. O'Brien opined that Zappia had brachial plexus neuropathy, upper trunk lesion and RSD. The ALJ further stated that Dr. O'Brien further opined that Zappia "had 'total disability with her dominant right arm and hand' and that her mental acuity and clarity were impaired due to the use of powerful analgesics." R. 24. The ALJ stated that these findings were inconsistent with the results of Dr. Mehra's 2004 neurological studies that were not typical of a brachial plexus injury. The ALJ also stated that Dr. O'Brien cited no objective findings that would support his

11

conclusion about Zappia's inability to use her right arm. The ALJ further stated that the neuropsychological testing did not support his opinions. R. 24.

The ALJ then set forth her determination of Zappia's RFC. The ALJ stated her findings in the negative. The ALJ stated that:

> [T]he claimant has not demonstrated with credible evidence that she is unable to perform light and sedentary work (this limitation is due to a level of pain/limitation supported by the credible record) with no climbing or work at unprotected heights (these limitations due to pain complaints especially of the upper and lower extremities and medication side-effects); no over shoulder or full extension reaching with the right upper extremity (due to her RSD/brachial plexus injury); and no prolonged walking (knee pain).

R. 26. Based on this finding, and Dr. Lanier's testimony, the ALJ found that Zappia could perform her prior work at Step 4, and so, concluded that Zappia was not disabled. R. 27.

The ALJ, further, stated that even if Zappia could not perform her prior work, she would be found to be not disabled at Step 5. The ALJ stated:

> Additional limitations are not supported by the credible evidence of record, but even if the claimant had additional physical limitations which limited her to sedentary work with a sit/stand option and had mental limitations (pain causing moderate problems with concentration, persistence and pace)

which limited her to routine and repetitive tasks; the claimant would be found not disabled at Step Five of the Sequential Evaluation.

R. 27.  Again, the ALJ relied on Dr. Lanier's testimony that a person with Zappia's education and work experience with the limitations quoted above could still perform a substantial number of jobs in the national economy. R. 28.  The ALJ therefore concluded that Zappia was not disabled.  R. 28-29.  The Appeals Counsel denied Zappia's request to review the decision. R. 5.  Zappia then brought this appeal.

## ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  The ALJ further must articulate at least minimally her analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  Diaz v.

Chater, 55 F.3d 300, 308 (7th Cir. 1995).

In this case, the Court cannot track the ALJ's analysis of the opinions of Zappia's treating physician, Dr. O'Brien. The regulations require the Commissioner to give controlling weight to the opinions of treating physicians if those opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527. Dr. O'Brien diagnosed a brachial plexus injury with RSD. The ALJ said that this diagnosis was not supported by evidence in the record, yet the ALJ found that Zappia suffered from "RSD/brachial plexus injury", and further, found that her RSD imposed limitations on her ability to perform over the shoulder work. R. 26. The Court does not understand how Dr. O'Brien's diagnosis was not supported by the record when the ALJ found that Zappia had the specific impairments that Dr. O'Brien had diagnosed.

The ALJ also stated that Dr. O'Brien did not present objective evidence to support his diagnosis that Zappia could not use her right arm. The ALJ, however, did not discuss whether any other objective medical evidence in the record supported Dr. O'Brien's diagnosis. For example, Dr. Chapa found hypersensitivity to pinpricks, no reflexes in the right biceps

14

and triceps and atrophy in the right shoulder muscles. Dr. Smucker observed discoloration, swelling and edema in Zappia's right arm, wrist, and hand. These objective signs seemed consistent with Dr. O'Brien's opinion. See 20 C.F.R. §§ 404.1512(b)(1) & 404.1528(b); <u>Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome</u>, SSR 03-2P, 2003 WL 22399117, at *2 (2003). The ALJ did not explain how she considered this evidence in evaluating whether to give controlling weight to Dr. O'Brien's opinions.

The ALJ also found that Dr. O'Brien's diagnosis was inconsistent with medical evidence in the record. The ALJ based this conclusion on the fact that Dr. O'Brien's diagnosis was inconsistent with the results of Zappia's EMG studies performed by Dr. Mehra. Dr. Mehra stated that the results were not typical of a brachial plexus injury, and Dr. Mehra did not diagnose RSD. The ALJ, however, found that Zappia suffered from "RSD/brachial plexus injury." Thus, Dr. Mehra's findings were not material to the ALJ's determinations of Zappia's impairments. Given that Dr. Mehra's findings were not material to the ALJ's determination of Zappia's RFC, it is unclear why Dr. Mehra's findings were material in evaluating Dr. O'Brien's

opinions. The Court cannot follow this internal inconsistency. The ALJ cited no other evidence that was inconsistent with Dr. O'Brien's opinions.[2] The Court, therefore, cannot track the ALJ's analysis of Dr. O'Brien's opinions.

The Court also cannot track the ALJ's analysis of the impact of Zappia's medications on her mental and cognitive abilities. When, as here, chronic pain causes severe impairments, the ALJ must consider the effects of the pain and the pain medication when assessing the RFC. SSR 03-2P, 2003 WL 22399117, at *5. The ALJ mentioned the mental effects of Zappia's pain in the RFC analysis, but did not address the mental impact of Zappia's pain medication on her RFC.[3]

Last, the Court cannot track how the ALJ distinguished between Zappia's subjective statements and the objective medical evidence. The ALJ dismissed much of the medical evidence because the physicians relied on Zappia's statements, and the ALJ found that Zappia was not credible. This

---

[2]The ALJ stated that Dr. O'Brien's opinions were not supported by the neuropsychological testing, but that was because the ALJ found that the tests results were not reliable. R. 24-25. The ALJ did not find that Dr. O'Brien's opinions were inconsistent with the test results.

[3]The ALJ referred to medication side-effects limiting Zappia's ability to climb and work at unprotected heights. R. 26. The ALJ did not address the medication's possible side effects on such mental or cognitive limitations.

credibility finding was supported by substantial evidence. The inconsistencies noted by the ALJ supported the conclusion that Zappia lacked credibility. Given the lack of credibility, the ALJ could reject subjective evidence based on Zappia's statements of her symptoms. See 20 C.F.R. § 404.1528(a). Objective medical evidence, however, is not based on a patient's statement, but, rather, laboratory and diagnostic testing and signs. 20 C.F.R. § 404.1528(b) &(c). Signs are anatomical, physiological, or psychological abnormalities which can be observed through the use of medically acceptable clinical diagnostic techniques. Id. The record contains objective medical signs of RSD, such as discoloration of the skin, edema, hypersensitivity to pinprick testing, muscle atrophy and the lack of reflexes. See SSR 03-2P, at *2. The Court cannot clearly determine whether the ALJ dismissed these signs when she dismissed Zappia's subjective statements of her condition. On remand, the ALJ should more clearly address the extent to which these signs observed by Zappia's physicians support the physicians' opinions.

Zappia also complains that the ALJ did not follow the Commissioner's directives in SSR 03-2P for evaluating RSD. The Commissioner responds that the ALJ implicitly followed the Commissioner's directives.

Commissioner's Memorandum in Support of the Motion for Summary Affirmance (d/e 18), at 10-11. On remand, the ALJ should explicitly follow the Commissioner's directives in SSR 03-2P. Following the Commissioner's directives explicitly, rather than implicitly, is appropriate in this case.

THEREFORE, the Plaintiff's Motion for Summary Judgment (d/e 12) is ALLOWED, and the Defendant Commissioner's Motion for Summary Affirmance (d/e 17) is DENIED. Judgment is entered in favor of Plaintiff Sheryl Zappia and against the Defendant Commissioner. The Decision of the Commissioner is reversed and remanded for further proceedings consistent with the Opinion. Judgment is entered pursuant to 29 U.S.C. § 405(g) sentence four. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  February 18, 2009

       FOR THE COURT:

                                  s/ Jeanne E. Scott
                                JEANNE E. SCOTT
                   UNITED STATES DISTRICT JUDGE